PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SHAWN R. WILSON, | ) |
| | ) CASE NO. 4:16CV2337 |
| Petitioner, | ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| | ) |
| CHRISTOPHER J. LaROSE,[1] Warden, | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Respondent. | ) [Resolving ECF Nos. 17 and 18] |

*Pro Se* Shawn R. Wilson, currently an inmate at the Northeast Ohio Correctional Center filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), alleging 15 grounds challenging the constitutional sufficiency of his conviction and sentence in Mahoning County, Ohio Court of Common Pleas Case No. 2012 CR 00919. The case was referred to Magistrate Judge George J. Limbert for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(2). The magistrate judge subsequently issued a Report and Recommendation (ECF No. 12). In his Report, the magistrate judge recommends that the Court

---

[1] According to Petitioner (ECF No. 11) and the Ohio Department of Rehabilitation & Correction website (https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A640014 (last visited September 19, 2019)), Petitioner is now confined at the Northeast Ohio Correctional Center. The Warden of that institution, Christopher J. LaRose, has been substituted for Charmaine Bracy, Warden.

(4:16CV2337)

dismiss the petition in its entirety with prejudice. ECF No. 12 at PageID #: 621, 659. The magistrate judge recommends

> that the Court find that all of Petitioner's Grounds for Relief are not fairly presented and/or procedurally defaulted and Petitioner fails to establish sufficient cause or prejudice to overcome the procedural default. Moreover, the Court should find that Petitioner's still picture of him on an alleged surveillance video is insufficient to establish actual innocence in order to overcome the procedural default. Alternatively, the undersigned recommends that the Court find that Petitioner's Grounds for Relief Numbers 1, 2, 7, and 8 are waived by his guilty plea and are otherwise without merit. The undersigned also recommends that the Court find that Petitioner's Grounds for Relief Numbers 1, 2, 5, 6, 7, 8, 11, and 15 are without merit as well. . . .

ECF No. 12 at PageID #: 658-59.

Petitioner timely filed Objections to the Magistrate Judge's Report (ECF Nos. 17 and 18).[2] The Court, after reviewing the Objections, hereby adopts the Report and denies the Petition.

## I. Facts

In August 2012, Petitioner was indicted on two counts of aggravated murder, both with firearm and capital offense specifications; two counts of improper discharge of a firearm at or into a habitation, both with firearm specifications; felonious assault, with a firearm specification; murder, with a firearm specification; and, tampering with evidence. Indictment (ECF No. 8-1 at PageID #: 117-20). The charges arose out of multiple shots being fired into apartments located in Youngstown, Ohio on August 20, 2012, resulting in the death of B.L. and injury to J.H., both

---

[2] These filings are identical with the exception of the dates listed in the "Mailing Declaration" on the last page of each, so the Court addresses them together and cites to only the latter filing (ECF No. 18) from this point forward.

(4:16CV2337)

minor children. Petitioner, with his two appointed counsel present, entered a not guilty plea at arraignment. *See* Judgment Entry (ECF No. 8-1 at PageID #: 121).

On November 7, 2012, Defense counsel moved the trial court for an Order for an evaluation of Petitioner's competency to stand trial pursuant to Ohio Rev. Code § 2945.371(G)(3) with a physician he specifically requested. The trial court appointed Anil C. Nalluri, M.D. Judgment Entry (ECF No. 8-1 at PageID #: 122-23). Dr. Nalluri examined Petitioner and found him competent to stand trial. The issue of Petitioner's competency to stand trial was heard at the status hearing conducted on December 4, 2012. Both parties stipulated to the contents and admission of the report authored by Dr. Nalluri. The Court accepted the report and found Petitioner competent to stand trial. Judgment Entry (ECF No. 8-1 at PageID #: 124).

On January 7, 2013, Petitioner withdrew his not guilty pleas and pleaded guilty pursuant to a written Plea Agreement (ECF No. 8-1 at PageID #: 127-32) to one count of aggravated murder (Count Two), felonious assault, both counts of improperly discharging a firearm at or into a habitation, and tampering with evidence, all with accompanying firearm specifications except the latter offense. His attorneys negotiated a plea agreement in which a charge of murder, aggravated murder, two accompanying gun specifications, and two capital offense specifications were dismissed. *See* Judgment Entry (ECF No. 8-1 at PageID #: 126). The State and defense jointly recommended an agreed upon sentence of life imprisonment without the possibility of parole on the aggravated murder count and the maximum allowable sentence on each of the other counts to be served concurrently. Furthermore, the prosecutor agreed to recommend running the sentences on several other counts concurrent to the life sentence on the one count of aggravated

3

(4:16CV2337)

murder to which Petitioner did plead. Following an extensive hearing, the trial court accepted Petitioner's guilty pleas on January 7, 2013. Transcript of Change of Plea Hearing (ECF No. 8-1 at PageID #: 442-59). By pleading guilty, Petitioner avoided the possibility of being executed. Therefore, a mitigation hearing was not held.

At the guilty plea hearing, the trial court judge advised Petitioner of his constitutional and nonconstitutional rights. *See* Judgment Entry (ECF No. 8-1 at PageID #: 133). The judge inquired of Petitioner and he answered that he understood each right he was waiving. ECF No. 8-1 at PageID #: 446-47. When addressed by the judge on the record, Petitioner did state that he was using a number of prescription medications, but that those in no way affected his ability to understand the process. When the trial court further inquired about this medication and whether it affected Petitioner's ability to understand, Petitioner initially replied "[n]ot really, but yes, I understand." The judge continued to question Petitioner regarding the medication's effect on his ability to understand the proceedings and he repeatedly confirmed that his medication did not affect his ability to understand the judge. ECF No. 8-1 at PageID #: 457-58. Petitioner also specifically acknowledged that he was satisfied with the legal representation he received. ECF No. 8-1 at PageID #: 446. Furthermore, Petitioner stated that his pleas were being made freely and voluntarily, and that neither of his two attorneys pressured him into taking the deal:

> **THE COURT:** All right. Is your plea being freely and voluntarily made?
> **MR. WILSON:** Yes.
> **THE COURT:** Has anyone forced this upon you or threatened you or promised you anything, other than what we've talked about here in court, to get you to plead guilty?
> **MR. WILSON:** No, nobody.

4

(4:16CV2337)

ECF No. 8-1 at PageID #: 455.

Pursuant to the request of the State and Petitioner, the trial court immediately proceeded to a sentencing hearing. Petitioner acknowledged his crimes by apologizing to the mother of B.L., his eight-year old victim, during the hearing. Transcript of Sentencing Hearing (ECF No. 8-1 at PageID #: 465-66). The trial court adopted the agreed upon recommended sentence of life in prison plus an additional eight years, to be served concurrently; but ordered Wilson to serve five years on the firearm specification attached to the aggravated murder charge, to be served consecutively and prior to the life sentence. For purposes of sentencing, the trial court merged the remaining firearm specifications and imposed no sentence. ECF No. 8-1 at PageID #: 460-69; Judgment Entry of Sentence (ECF No. 8-1 at PageID #: 135-38). The trial court judge stated the following at the end of the Sentencing Hearing: "The crimes in Counts Three, Four, Five and Seven are counts for which you would ordinarily be subjected to post-release control, but due to the sentence imposed on Count Two, the Court will not advise you of post-release control since it is unnecessary." ECF No. 8-1 at PageID #: 468. This was done after communication with the lawyers and with their agreement.

Petitioner, by and through new appointed counsel, appealed his conviction and sentence. He challenged his pleas of guilty on the grounds of ineffective assistance of counsel due to his counsel not securing a continuance for him to have adequate time to consider the Plea Agreement (ECF No. 8-1 at PageID #: 127-32). Petitioner argued that his attorneys pressured him into accepting the state's plea offer and that his mental state and related medications affected his ability to understand the process, so that the pleas were not entered knowingly, on his part. He

5

(4:16CV2337)

also raised issues regarding his competency evaluation and that he was entitled to a new competency hearing due to Dr. Nalluri's guilty plea in a completely unrelated matter. Brief of Appellant (ECF No. 8-1 at PageID #: 139-54).

In August 2013, Petitioner filed a Motion to Withdraw Guilty Plea. Due to the pendency of the direct appeal, the trial court ruled that it was without jurisdiction to consider the motion. Judgment Entry (ECF No. 8-1 at PageID #: 186). Petitioner did not appeal this decision.

In March 2014, the Seventh District Court of Appeals of Ohio affirmed Petitioner's conviction and sentence. *State v. Wilson*, No. 13 MA 10, 2014 WL 1327771 (Ohio App. 7th Dist. March 10, 2014) (ECF No. 8-1 at PageID #: 172-79) (*Wilson I*). Based upon a review of the record, the state appellate court found that Petitioner entered guilty pleas knowingly, intelligently, and voluntarily, and overruled his arguments. *Id.* at *5, ¶ 26. That court noted that the trial court informed Petitioner of his constitutional and nonconstitutional rights during the plea colloquy. *Id.* at *3, ¶¶ 15-16. The state appellate court specifically addressed and ruled on Petitioner's claims of ineffective assistance of counsel, particularly as to the competency evaluation and Wilson's claims that his mental state and medications rendered him unable to enter pleas knowingly. That court also stated that the record is devoid of any evidence suggesting that Petitioner's two attorneys or the trial court judge pressured him into taking the pleas. *Id.* at *5, ¶ 24. Finally, the state appellate court stated "[t]he [trial] court did not discuss postrelease control because of the sentence being life imprisonment without parole. This was done after communication with the lawyers and per their agreement." *Id.* at *3, ¶ 16. Petitioner did not appeal this decision to the Ohio Supreme Court.

6

(4:16CV2337)

On July 31, 2014, *Pro Se* Petitioner filed a second Motion to Withdraw Guilty Plea (ECF No. 8-1 at PageID #: 180-85) based on receiving the Psychological Report, dated "1/8/12,"[3] authored by Sandra B. McPherson, Ph.D., ABPP (ECF No. 10-3).[4] On September 3, 2014, the trial court ruled that it was "without jurisdiction to rule on Defendant's untimely and improper motion." Judgment Entry (ECF No. 8-1 at PageID #: 187).

*Pro Se* Petitioner filed a Notice of Appeal (ECF No. 8-1 at PageID #: 188). Petitioner attached numerous exhibits to his brief. Most of these exhibits, however, were not part of the trial court record. *See* Table of Contents (ECF No. 8-1 at PageID #: 191). Petitioner argued that Dr. Nalluri, who later pleaded guilty to fraud in a workers' compensation case, agreed to testify that Petitioner was competent to stand trial so that Dr. Nalluri would receive a lighter sentence in his fraud case. *See, e.g.*, ECF No. 8-1 at PageID #: 202. In November 2015, the Seventh District Court of Appeals of Ohio affirmed the trial court's denial of Petitioner's second request to withdraw his guilty pleas. *State v. Wilson*, No. 14 MA 138, 2015 WL 7430000 (Ohio App. 7th Dist. Nov. 17, 2015) (ECF No. 8-1 at PageID #: 227-36) (*Wilson II*). The state appellate court revisited certain claims from Petitioner's direct appeal. Petitioner sought to withdraw his pleas raising the issue that his competency evaluation was flawed because of later, completely

---

[3] This is a typographical error. It should read "1/8/13."

[4] Sandra B. McPherson, Ph.D., ABPP and Donald McPherson, M.Ed. were given permission to assess Petitioner's mental health to assist in his defense on October 12, 2012, well before his plea hearing.

7

(4:16CV2337)

unrelated, bad conduct of his requested doctor,[5] and because the medications he was taking for his mental problems coupled with the underlying mental disturbances themselves rendered his pleas invalid. Because Petitioner's claims and the evidence on which he relied to support these claims were virtually undistinguishable in his post-sentence motion from the evidence addressed on direct appeal, the state appellate court held that the trial court correctly decided Petitioner's repetitive claims were barred as *res judicata*. The state appellate court stated: "Since the issue resolved on appeal in *Wilson I* involved the voluntary nature of Appellant's plea, the very matter raised in both of Appellant's motions to withdraw, the matter became *res judicata* once our decision on direct appeal was filed. The trial court correctly dismissed Appellant's motion for this reason." *Id.* at *3.

*Pro Se* Petitioner filed a Motion for Reconsideration Pursuant to App. R. 26(A) (ECF No. 8-1 at PageID #: 259-67). In February 2016, the Seventh District Court of Appeals of Ohio denied Petitioner's motion for reconsideration for several reasons. *State v. Wilson*, No. 14 MA 138, 2016 WL 538518 (Ohio App. 7th Dist. Feb. 4, 2016) (ECF No. 8-1 at PageID #: 281-90) (*Wilson III*). First, Petitioner is time-barred in his reconsideration request. *Id.* at *1, ¶ 7. Second, there is no evidence outside of the trial court record that is crucial for a full and fair determination of the issues Petitioner presents. *Id.* at *3, ¶ 17.

In March 2016, *Pro Se* Petitioner filed a Notice of Appeal (ECF No. 8-1 at PageID #: 237-38) and a Motion for Leave to File a Delayed Appeal (ECF No. 8-1 at PageID #: 239-57) in

---

[5] The unrelated later workers' compensation fraud conviction of Dr. Nalluri. "[T]his 'evidence,' such as it is, was considered both in the trial court and on appeal." *Wilson III*, 2016 WL 538518, at *5, ¶ 23.

8

(4:16CV2337)

the Supreme Court of Ohio. On May 4, 2016, the Supreme Court of Ohio denied the motion without providing reasons. *State v. Wilson*, 145 Ohio St.3d 1456 (2016) (ECF No. 8-1 at PageID #: 258).

In April 2016, *Pro Se* Petitioner filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence pursuant to Ohio Rev. Code § 2953.21, a Motion for Appointment of Counsel, and a Motion for Expert Assistance (ECF No. 8-1 at PageID #: 319-31) in the trial court. In response, the State of Ohio filed a Motion to Dismiss (ECF No. 8-1 at PageID #: 332-45). On April 21, 2016, the trial court dismissed the post-conviction petition. It ruled that it was without jurisdiction because the petition was untimely filed under § 2953.21(A)(2), and Petitioner did not satisfy Ohio Rev. Code § 2953.23(A)(1) in explaining why the delay should be excused. In the alternative, that court found Petitioner "failed to support his postconviction petition with competent and credible evidence *dehors* the record of his actual innocence or a constitutional violation." Judgment Entry (ECF No. 8-1 at PageID #: 346-47). Petitioner did not appeal this decision to the Seventh District Court of Appeals of Ohio.

Also in April 2016, *Pro Se* Petitioner filed a Petition for Writ of Habeas Corpus (ECF No. 8-1 at PageID #: 291-316) in the Supreme Court of Ohio, but then subsequently moved the court for a voluntary dismissal without prejudice because the petition lacked requisite documentation for it to be properly filed (ECF No. 8-1 at PageID #: 317). On May 6, 2016, the Supreme Court of Ohio dismissed the petition. Entry (ECF No. 8-1 at PageID #: 318).

Ten days later, *Pro Se* Petitioner filed a second Petition for Writ of Habeas Corpus (ECF No. 8-1 at PageID #: 348-404) in the Supreme Court of Ohio. Wilson asserted, *inter alia*, the

9

(4:16CV2337)

failure to consider his innocence based upon an alibi, which is the newly discovered evidence of a picture from a surveillance camera showing that he was in another city minutes before the shooting occurred. ECF No. 8-1 at PageID #: 364. On July 27, 2016, the Supreme Court of Ohio *sua sponte* dismissed the petition. Entry (ECF No. 8-1 at PageID #: 405). *Pro Se* Petitioner filed a Motion for Reconsideration (ECF No. 8-1 at PageID #: 406). On October 5, 2016, the Supreme Court of Ohio denied the motion. Entry (ECF No. 8-1 at PageID #: 407).

On September 19, 2016,[6] Petitioner filed the instant Petition for a Writ of Habeas Corpus (ECF No. 1). It was received by the Court on September 20, 2016.

**II. Standard of Review for a Magistrate Judge's Report and Recommendation**

When objections have been made to the Magistrate Judge's Report and Recommendation, the District Court standard of review is *de novo*. Fed. R. Civ. 72(b)(3). A district judge:

> must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*

Accordingly, this Court has conducted a *de novo* review of the portions of the Magistrate Judge's Report to which Petitioner has properly objected.

---

[6] Under Sixth Circuit precedent, the petition is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his petition on September 19, 2016. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 Fed.Appx. 497, 498 n. 1 (6th Cir. 2006) (per curiam)).

(4:16CV2337)

### III. Law & Analysis

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus may not be granted unless the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *see also Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001). The task of the Court is not to determine whether the state court appellate decisions were right or wrong. Instead, under the AEDPA, the Court must decide whether the state appellate court's adjudication of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained:

> an *unreasonable* application of federal law is different from an *incorrect* application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Renico v. Lett*, 559 U.S. 766, 773(2010) (internal citations and quotations omitted) (emphasis in original).

11

(4:16CV2337)

### A. Objection One

According to Petitioner, "on or about March 23rd, 2014," his attorney for the direct appeal discovered within the unofficial trial court record four different still photos from video surveillance. ECF No. 18 at PageID #: 704.[7] Wilson argues the surveillance videotape, and the four still digital photos taken therefrom, clearly substantiates that Petitioner was in an entirely different city Struthers Ohio minutes before the time the shooting occurred. He contends the location in Struthers is, at a minimum, a twenty-minute drive and approximately 30 miles from where the shooting occurred. ECF No. 18 at PageID #: 707. Petitioner, however, fails to provide reliable evidence of his alibi. Petitioner objects to the magistrate judge's recommendation that

> the Court find that Petitioner's claim of actual innocence in his Traverse before this Court is suspect. Further, as evidence establishing his actual innocence, Petitioner merely attaches a still picture allegedly taken from video surveillance at a Sami's Quik Stop which states "Outside Drive Thru" on it and has the date and a time read-out at the bottom of the picture. ECF Dkt. #10-14 at 1. The undersigned recommends that the Court find that this, without more, and in light of no prior claims of actual innocence, is insufficient to overcome the requirements of actual innocence. ECF No. 12 at PageID #: 650.

ECF No. 18 at PageID #: 703-704.

Petitioner acknowledged his crimes by apologizing to the mother of B.L., his eight-year old victim, during the Sentencing Hearing. ECF No. 8-1 at PageID #: 465-66. Petitioner's

---

[7] Petitioner states that "Prison authorities somehow inadvertently lost or destroyed three of the four surveillance photos, in addition to some other documents, during Petitioner's transfer to Trumbull Corr. Inst. from Lorain Corr. Inst. And, unfortunately, Petitioner's efforts to reacquire a copy of those three digital photos has been all for [naught]." ECF No. 18 at PageID #: 705 n. 5. Petitioner did not submit the photo (ECF No. 10-14) to this Court until after Respondent filed the Return of Writ (ECF No. 8).

12

(4:16CV2337)

on-the-record confessions of guilt carry a presumption of truthfulness. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). Nothing in clearly established Supreme Court law compelled the state courts to accept Petitioner's contrary allegations made after he entered his pleas.

The Court agrees with the magistrate judge that Petitioner could have and should have raised his contention that he has "an alibi defense/Innocence Claim" before the Seventh District Court of Appeals of Ohio and thereafter before the Supreme Court of Ohio as this claim was apparent on the record. ECF No. 12 at PageID #: 645. This claim is procedurally defaulted because Petitioner did not fairly present it to the state appellate courts. *See Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (If a prisoner fails to fairly present his claim to the state courts, and a state procedural rule now bars the state courts from considering it, the claim is procedurally defaulted.). The still photo from video surveillance is insufficient to establish actual innocence in order to overcome the procedural default.

**B. Objection Two**

According to Petitioner, if his trial attorneys were made aware of the existence of the still picture allegedly taken from video surveillance at the Sami's Quik Stop (ECF No. 10-14) during the discovery process and still induced him to plead guilty, then this establishes constitutionally inadequate legal representation. Petitioner argues this further proves that his guilty pleas were not knowingly, voluntarily and/or intelligently entered  "as clearly raised within Petitioner's Ground Six." ECF No. 18 at PageID #: 709. Wilson complains that he was "unlawfully kept completely unaware of said exculpatory evidence" and "was prevented from presenting such

13

(4:16CV2337)

within his criminal trial proceeding." ECF No. 18 at PageID #: 712. He also maintains that an evidentiary hearing is necessary. ECF No. 18 at PageID #: 713.

To be valid, a guilty plea must be voluntarily and intelligently made. *Id.* at 748-49. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. U.S.*, 397 U.S. 742, 748 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757. "[T]he decision whether or not to plead guilty ultimately rests with the client." *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002).

Petitioner has failed to demonstrate that he was denied the effective assistance of counsel or that the state adjudication of this claim was unreasonable. There is no record evidence that Petitioner's counsel performed deficiently, and because the state appellate court adjudicated the ineffective assistance of counsel claim on the merits in *Wilson I*, Petitioner may not now rely on evidence or allegations that were not put before the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Having reviewed the record, the Court is satisfied that Petitioner's pleas were knowing, intelligent, and voluntary and that the state court's opinions finding the same are not contrary to or an unreasonable application of Supreme Court precedent.

A defendant has the right to effective assistance of counsel when considering whether to accept a plea bargain. *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012). But to prevail on a claim

14

(4:16CV2337)

that his original trial counsel were ineffective during plea negotiations, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). This requires showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The "prejudice" prong of the two-part *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. In other words, the defendant "must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. 1384.

In the context of guilty pleas, to establish prejudice under *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006) (quoting *Hill*, 474 U.S. at 59). Petitioner does not establish this reasonable probability. Wilson fails to demonstrate that counsel erred and/or that he was prejudiced by counsel's conduct. In addition, Petitioner's guilty pleas waived his Grounds for Relief alleging constitutional violations that preceded his guilty pleas prior thereto except for a review of whether his pleas were intelligently and voluntarily entered. *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012). Habeas relief is not warranted on this claim.

**C. Objection Three**

In his Motion for Leave to File a Delayed Appeal (ECF No. 8-1 at PageID #: 239-57), Petitioner stated he filed his Notice of Appeal from *Wilson II* and Memorandum in Support of Jurisdiction in the wrong court. He now argues "[a]n external impediment  the Office of the

15

(4:16CV2337)

Clerk for the Seventh District Court of Appeals prevented Petitioner's notice of appeal and memorandum in support from being timely [filed] with the Supreme Court of Ohio: namely, by transferring or simply returning to Petitioner [his] original notice of appeal and memorandum in support of jurisdiction." ECF No. 18 at PageID #: 716. In the alternative, Petitioner contends his inadvertent error, *i.e.*, mailing the notice of appeal and memorandum in support of jurisdiction to the Office of the Clerk for the Seventh District Court of Appeals instead of the Clerk of Court for the Supreme Court of Ohio, can be held as excusable neglect. ECF No. 18 at PageID #: 716.

A state court's conditions of filing may include requirements as to "the court and office in which it must be lodged." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Pursuant to S.Ct.Prac.R. 7.01(A)(1)(a)(i), "[t]o perfect a jurisdictional appeal from a court of appeals to the Supreme Court as defined by S.Ct.Prac.R. 5.02(A), the appellant shall file a notice of appeal in the Supreme Court within forty-five days from the entry of the judgment being appealed. . . ."

Federal courts are permitted to review a state prisoner's petition for writ of habeas corpus only on claims that the custody is in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding that "federal court[s] may not issue the writ on the basis of a perceived error of state law."). Petitioner's argument that the Office of the Clerk for the Seventh District Court of Appeals is to blame for Petitioner not timely filing a notice of appeal in the Supreme Court raises an issue under state law and, therefore, is not cognizable.

(4:16CV2337)

## D. Objection Four

According to Petitioner, "on or about 03/21/2013," his attorney for the direct appeal also supplied him with a copy of the Psychological Report authored by Dr. McPherson. (ECF No. 10-3). ECF No. 18 at PageID #: 717. Contrary to Petitioner's assertion that this is a "psychological competency report" (ECF No. 18 at PageID #: 717), Petitioner "was evaluated and other investigations as detailed below were completed as part of developing information that might be significant for his mitigation phase in his capital murder case. . . . The below may be of some relevance to his treatment needs in prison. . ." (ECF No. 10-3 at PageID #: 522). The Report provides, in pertinent part:

> OBSERVATIONS
> As of 10/3/12, when he was interviewed, he was fairly coherent. The attempt to test him on 10/30/12 was not successful and he impressed as floridly psychotic to Donald McPherson. He was seen on 10/16/12 when he was reasonably coherent and produced a scorable MCMI-III, as well as being able to respond to the TAT and to function in interview even though he was interviewed for the most part under conditions that were distracting. It would appear that the deterioration into a more florid state occurred but questions of over-presentation could be raised. In the opinion of this psychologist, his confrontation with the realities of his situation increased his stress. His resources are extremely limited and his personality organization is weak and involves significant psychopathology. He probably is at times psychotic in his thinking. A retreat into either psychotic like presentation or regressive behavior may represent his only defenses from unacceptable aspects of his reality. He has longstanding behavioral dyscontrol. His diagnostic status is insecure at this point. At some point in a stabilized environment with uncertainty as to his future reduced, more adequate assessment may be possible. He will need psychiatric and psychological monitoring.

ECF No. 10-3 at PageID #: 538. Petitioner contends his trial counsel insisted to him that this written report did not exist. ECF No. 18 at PageID #: 718. To the contrary, "all parties were aware of this evaluation and [Petitioner] was free to use the report to assist in his defense if he

17

(4:16CV2337)

felt it was necessary at the time." *Wilson III*, 2016 WL 538518, at *4, ¶ 20. By pleading guilty, Petitioner avoided the possibility of being executed. Therefore, there wasn't a mitigation phase of a trial. The Psychological Report authored by Dr. McPherson. (ECF No. 10-3) is, however, useful evidence the defense *could* have presented during the mitigation phase.

### E. Objection Five

Next, Petitioner complains that his trial counsel stipulated to the psychological competency report of Anil C. Nalluri, M.D. and thereby waived a competency hearing to be conducted by the trial court. ECF No. 18 at PageID #: 722. Defense counsel moved the trial court for an Order for an evaluation of Petitioner's competency to stand trial with a physician he specifically requested. The trial court appointed Dr. Nalluri. Judgment Entry (ECF No. 8-1 at PageID #: 122-23). Dr. Nalluri examined Petitioner and found him competent to stand trial. At the status hearing conducted in December 2012, both parties stipulated to the contents and admission of the report authored by Dr. Nalluri. The Court accepted the report and found Petitioner competent to stand trial. Judgment Entry (ECF No. 8-1 at PageID #: 124). Petitioner discusses Dr. Nalluri's guilty plea in a completely unrelated matter. It is undisputed that Dr. Nalluri later pleaded guilty to fraud in a workers' compensation case. "[T]his 'evidence,' such as it is, was considered both in the trial court and on appeal." *Wilson III*, 2016 WL 538518, at *5, ¶ 23.

Under the circumstances, Petitioner's trial counsel were not ineffective for stipulating to the competency report. Although Petitioner contends that his counsel should not have stipulated to the competency report, there is no evidence in the record that counsel acted inappropriately or

18

(4:16CV2337)

that Wilson was incompetent at the time he entered his pleas. During the plea colloquy, the trial court inquired of Petitioner and Wilson answered that he understood each right he was waiving and the consequences of his plea agreement. ECF No. 8-1 at PageID #: 446-47.

### F. Objection Six

Finally, Petitioner objects to the magistrate judge citing to *Wilson I*'s explanation that the trial court did not discuss post-release control with Petitioner because the sentence that Petitioner agreed to was life in prison without the possibility of parole. ECF No. 18 at PageID #: 724. An individual sentenced for aggravated murder, such as Petitioner, is not subject to post-release control because that crime is an unclassified felony to which the post-release control statute does not apply. *State v. Clark*, 119 Ohio St.3d 239, 246, ¶ 36 (2008). Generally, a court does not have to inform a defendant about the possibilities or intricacies of parole for a sentence that could last for the defendant's lifetime. *Id.* at ¶ 37 ("Because parole is not certain to occur, trial courts are not required to explain it as part of the maximum possible penalty in a Crim.R. 11 colloquy."). Moreover, offenders tend to object to the imposition of post-release control; they do not seek it out.

## IV. Conclusion

Petitioner's Objections (ECF No. 18) are overruled and the Report and Recommendation (ECF No. 12) of the magistrate judge is adopted. Shawn R. Wilson's Petition for a Writ of Habeas Corpus (ECF No. 1) is denied.

19

(4:16CV2337)

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

 September 23, 2019             /s/ Benita Y. Pearson  
Date            Benita Y. Pearson  
           United States District Judge